IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHELLE D. PROVINCE,                    Case No. 3:11-cv-59-MA

              Plaintiff,            OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

              Defendant.

GEORGE J. WALL
1336 E. Burnside, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

L. JAMALA EDWARDS
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Michelle D. Province seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, this court reverses the decision of the Commissioner and remands for an immediate calculation of benefits.

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

Plaintiff was previously determined to be disabled as of September 13, 2002, due to brittle diabetes with a pancreas transplant which medically equaled Listing 4.02 in a decision dated January 13, 2004.  As part of a Continuing Disability Review by Disability Determination Services (DDS), it was determined plaintiff's condition had improved and that she was no longer disabled as of December 11, 2007.  Plaintiff appealed that decision, and a hearing was held before an Administrative Law Judge (ALJ) on January 12, 2009, and a supplemental hearing on July 30, 2009.  On August 19, 2009, the ALJ issued an unfavorable decision, finding that plaintiff's disability ceased on December 11, 2007 due to medical improvement.  The Appeals Council denied plaintiff's request for review on November 19, 2010.  The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was born on December 17, 1970.  Plaintiff completed school through the eighth grade and later obtained a GED. Plaintiff also completed a program to be a dental assistant. Plaintiff has past relevant work as a receptionist, a dental assistant, and museum installation curator.  Plaintiff underwent a pancreatic transplant on April 28, 2003.  Plaintiff was involved in a motor vehicle accident in March of 2007, and as a result, underwent a lumbar fusion of discs L5-S1 in July of 2008. Plaintiff has a past history of suicide attempts.  In January of 2009, plaintiff was enrolled at Portland Community College, taking two courses per semester.

## CESSATION OF DISABILITY ANALYSIS

A claimant has the burden of proving disability.  <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."    42 U.S.C. § 423(d)(1)(A).  Social security benefits may be terminated if substantial evidence demonstrates medical improvement, resulting in the claimant's ability to engage in substantial gainful activity. 42 U.S.C. § 423(f);  20 C.F.R. § 404.1594(a).  If the claimant's condition has medically improved and the improvement is related to

the claimant's ability to work, the ALJ must then consider whether the claimant's current impairments, including any new impairments, preclude substantial gainful activity. 20 C.F.R. § 404.1594(b)(5).

The Commissioner has established an multi-step sequential evaluation for determining whether a claimant's disability has ceased. 20 C.F.R. § 404.1594. At step one, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, the evaluation continues.

At step two, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. § 404.1594(f)(2). If not, the evaluation continues.

At step three, the ALJ must determine whether there has been a medical improvement. 20 C.F.R. § 404.1594(f)(3). A medical improvement is any decrease in medical severity of the impairment as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If there is improvement, the analysis continues to step four. If there is no improvement, the process moves to step six.

At step four, the ALJ must determine whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4). If the improvement is not related to the claimant's ability to work, the evaluation proceeds to step five.

If the improvement is related to the claimant's ability to work, the evaluation jumps to step six.

At step five, the ALJ must determine whether an exception to medical improvement applies. If an exception applies, the evaluation continues to step six, unless the exception is one involving fraud or non-cooperation, as detailed in 20 C.F.R. § 404.1594(e).

At step six, the ALJ must determine whether the claimant's current impairment or combination of impairments is severe. 20 C.F.R. § 404.1594(f)(6). If not, benefits cease.

At step seven, the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7). If so, benefits cease.

At step eight, if the claimant is unable to perform past relevant work, the ALJ must determine whether other work exists that the claimant can perform considering her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If so, benefits cease. If not, benefits continue.

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity. At step two, the ALJ determined that as of December 11, 2007, plaintiff has not had an impairment or combination of impairments that meets or medically equals a listing. At step three, the ALJ found that medical improvement had

occurred and that the improvement was related to plaintiff's ability to work at step four.

At step six, the ALJ determined that plaintiff continues to have severe impairments, and at step seven that plaintiff was unable to perform her past relevant work. At step eight, the ALJ concluded that as of December 11, 2007, considering plaintiff's age, education, work experience, and residual functional capacity (RFC) based on her current impairments, jobs exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ concluded that as of December 11, 2007, plaintiff's disability ceased, and that she has not become disabled again since that date. (Tr. 22.)

The court notes that there is nothing in the ALJ's decision that indicates the significance of December 11, 2007. The ALJ does not cite to any specific event or record evidence when providing this date, nor could the court discern anything significant about this date from the record.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made several errors:(1) improperly discrediting the opinions of Pritham Y. Raj, M.D., her treating psychiatrist, and Tracey Hoffman, Psy.D., an examining psychologist; (2) improperly discrediting her testimony; (3) improperly discrediting the lay witness testimony; (4) improperly

rejecting testimony from Nancy E. Bloom, the vocational expert; and (5) failing to properly consider her physical impairments.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.    42 U.S.C. § 405(g); Bayliss v. Barnhart, 427 F.3d 1211, 1214, n.1 (9th Cir. 2005).    Substantial evidence is more than a "mere scintilla" of evidence, but less than a preponderance; "it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).    "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004)(internal citations omitted); Andrews, 53 F.3d at 1039-40.

## DISCUSSION

### I.    Medical Evidence.

In general, a treating physician's opinion is given more weight than the opinion of a non-treating physicians. Turner v. Commissioner of Soc. Security, 613 F.3d 1217, 1223 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).    If the treating physician's medical opinion is supported by medically

7 - OPINION AND ORDER

acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). If a treating physician's opinion is not given controlling weight because it is not well-supported, or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 404.1527(d)(2). Id.; see also SSR 96-2.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss, 427 F.3d at 1216; Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

////

////

8 - OPINION AND ORDER

**A.   Dr. Raj's Opinion.**

Plaintiff submits that the ALJ has failed to provide clear and convincing reasons for rejecting the opinion of Pritham Raj, M.D., her treating psychiatrist.[1]  A review of the record indicates that plaintiff had four treatment visits with Dr. Raj.  In her first contact with Dr. Raj on February 7, 2007, plaintiff reported severe anxiety, with crying episodes of decompensation, and that she was unable to attend school.  Dr. Raj noted plaintiff's longstanding history of depression, and diagnosed a general anxiety disorder, and prescribed Zoloft.  (Tr. 257-60.)  In a follow up visit on March 28, 2007, plaintiff was more upbeat, less panicked and reportedly felt in more control.  (Tr. 251.)

However, on January 29, 2008, plaintiff was upset from a break up with her then boyfriend, was experiencing suicidal ideation, and panic attacks.  (Tr. 349.)  At that time, plaintiff reported feeling overwhelmed – like she is "coming out of her mind."  (Id.) Dr. Raj noted that plaintiff's suicidal ideation emerged, but that

---

[1]The parties appear to agree that the ALJ needed to provide clear and convincing evidence to discount Dr. Raj's opinion. Indeed, examining psychologist Cheryl Brischetto, Ph.D. in essence concurred with the opinion of Dr. Raj, and offered the same diagnoses, depression, anxiety, and borderline personality disorder, except that Dr. Brischetto found plaintiff's conditions not as severe based on the results of the MMPI-2, which showed some symptom exaggeration. However, the ALJ did not rely on the MMPI-2 results when discounting either the opinion of Dr. Raj, or in assessing plaintiff's credibility.

plaintiff did not have an active plan at that time.  Dr. Raj
diagnosed depression and a panic disorder, encouraged plaintiff to
see a therapist, and increased her Zoloft dosage.  (Tr. 353.)  In
a November 11, 2008 office visit, plaintiff reported that her
medications were helping with anxiety, depression, and motility.
Dr. Raj noted that plaintiff reported that the Zoloft has "helped
eliminate the strong [suicidal ideation] of the past" and that
plaintiff "reports only fleeting thoughts with no intent."  (Tr.
532.)  Dr. Raj noted that plaintiff reported that she has a new
boyfriend who lives with her, and that she remains in school, but
she is concerned about keeping up with coursework.  (Id.)

     In December of 2008, Dr. Raj completed a check-the-box form in
which he opined that plaintiff's anxiety severely limited her
ability to complete a normal work day without interruptions, that
she had moderate impairments dealing with co-workers, moderately
severe impairments dealing with the public, and that she had
moderately severe difficulties dealing with changes in routine in
the workplace, and that her anxiety would likely increase her
absences beyond one or two days a month.  (Tr. 537-39.)

     The ALJ gave Dr. Raj's opinion "little weight" on the grounds
that: (1) Dr. Raj's November 2008 treatment notes indicated that he
had not treated plaintiff since April of 2007; (2) Dr. Raj wanted
plaintiff to avoid a "disabled mentality;" (3) Dr. Raj's treatment
notes were inconsistent with debilitating limitations; and (4) the

10 - OPINION AND ORDER

limitations described by Dr. Raj were inconsistent with plaintiff's activities of daily living.

As plaintiff correctly indicates, the ALJ's assertion that as of November 2008, Dr. Raj had not treated plaintiff since April of 2007, is not supported by substantial evidence. Plaintiff sought treatment from Dr. Raj on January 29, 2008. (Tr. 349.) Although Dr. Raj erroneously indicated that he had not seen plaintiff in over a year, the record clearly contains treatment notes from January of 2008. Plaintiff's attorney highlighted the discrepancy in Dr. Raj's notes to the ALJ at the hearing, yet the ALJ does not discuss the January notation in the decision. (Tr. 602-03.) Furthermore, as Dr. Raj's notes indicate, between February and November of 2008, plaintiff was regularly attending counseling sessions with therapist Deborah Orandon, M.S., as directed by Dr. Raj. While an ALJ may consider the frequency of contact between a treating source and a claimant when determining what weight to give the source's opinion, I find that the 10-month lapse between plaintiff's visits with Dr. Raj in this case is not a clear and convincing reason to reject his December 2008 opinion. See 20 C.F.R. § 404.1527(d)(i). As Dr. Raj noted, plaintiff was seeking assistance from a counselor, as per his instructions.

I likewise reject the ALJ's conclusion that Dr. Raj's opinion is inconsistent with his treatment notes. As detailed above, Dr. Raj's treatment notes indicate serious symptoms, including strong

suicidal ideation, panic attacks, and episodes of decompensation. To be sure, Dr. Raj's most recent treatment note cited by the ALJ indicated "fleeting thoughts" of suicide, despite plaintiff's improvement on medication. See Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1200-01 (9th Cir. 2008)(despite that claimant's depression was improving, doctor's notes were not inconsistent with severe symptoms). After thoroughly reviewing Dr. Raj's treatment notes, I find that the ALJ's conclusion that his treatment notes are inconsistent with debilitating symptoms is not supported by substantial evidence.

Lastly, the ALJ discounted Dr. Raj's opinion because plaintiff informed Dr. Raj she was seeking disability and that Dr. Raj noted that he was concerned about plaintiff avoiding a "disabled mentality." (Tr. 533.)  Dr. Raj did not provide any additional information about this statement, nor did the ALJ provide any further explanation.  Notably, one month after making this notation, Dr. Raj opined that plaintiff's anxiety and depression prohibit plaintiff's ability to work.  Additionally, the ALJ may not discount Dr. Raj's opinion simply because it was obtained for purposes of plaintiff's disability claim. Lester, 81 F.3d at 832; Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).

I reject the Commissioner's suggestion that the ALJ could reasonably reject Dr. Raj's opinion because it was not based on objective testing.  The ALJ did not identify this as a basis for

rejecting Dr. Raj's opinion.  The Commissioner may not rely on such a basis now.  Stout v. Commissioner, 454 F.3d 1050, 1054 (9th Cir. 2006)(the court may review only those reasons the ALJ asserts); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts.").

On this record, therefore, I conclude that the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting the opinion of Dr. Raj, plaintiff's treating psychiatrist.  Orn, 495 F.3d at 632-33.

### B.    Tracey Hoffman, Psy.D. and Cheryl Brischetto, Ph.D.

Plaintiff met with Tracey Hoffman, a Licensed Clinical Psychologist, on July 7, 2009, for two and half hours.  During that interview, Dr. Hoffman observed that plaintiff was anxious, was wringing her hands, and shaking.  Dr. Hoffman did not administer any testing, but reviewed the psychodiagnostic interview conducted by Dr. Brischetto, an assessment by plaintiff's counselor Debrah Orandon, the notes and assessment by Dr. Raj, and a letter from Dr. Sauvain, M.D.  Based on the interview and review of plaintiff's records, Dr. Hoffman diagnosed major depressive disorder, anxiety disorder, and borderline personality disorder, and assigned a GAF of 35.[2]  Dr. Hoffman opined that due to her symptoms, plaintiff is

---

[2]A Global Assessment of Functioning (GAF) score is an estimate of plaintiff's overall level of functioning at that time.  See American Psychiatric Ass's, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 1994, Text Revision

markedly impaired in her ability to sustain full-time work. (Tr. 565.) The ALJ rejected the opinion of Dr. Hoffman because Dr. Hoffman did not conduct any independent testing of plaintiff, and because his opinion was inconsistent with plaintiff's ability to attend college and earn a 3.2 grade point average.

Instead, the ALJ favored the opinion of examining psychologist Cheryl Brischetto, Ph.D., whose opinion the ALJ gave "significant weight." On February 10, 2009, plaintiff underwent a psychodiagnostic interview with Dr. Brischetto, which included a review of her records, a clinical interview, and the administration of the Wechsler Adult Intelligence Scale III, an Orientation subtest from the Wechsler Memory Scale II, the Beck Depression Inventory II, the Beck Anxiety Inventory, and the Minnesota Multiphasic Personality Inventory 2 (MMPI-2). Based on the MMPI-2 results, Dr. Brischetto found that plaintiff had exaggerated symptom reporting. Dr. Brischetto concurred that plaintiff suffered depression and anxiety, but based on plaintiff's self-reporting, Dr. Brischetto diagnosed Dysthymia or chronic depression and Anxiety Disorder NOS, with a provisional Axis II diagnosis of Borderline Personality Traits. (Tr. 551-52.) Dr. Brischetto found that plaintiff had mild limitations in the ability to understand,

2000)(DSM IV-TR). A GAF of 35 indicates some impairment in reality testing or communication, or "major impairment in several areas such as work or school, family relations, judgment, thinking or mood." Id. at 34.

remember and carry out complex instructions, and moderate limitations in the ability to interact appropriately with co-workers, the public, and supervisors.

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Hoffman in favor of Dr. Brischetto. I disagree. Drs. Brischetto and Hoffman are examining physicians, who each met with plaintiff one time. The ALJ sufficiently articulated that Dr. Briscetto's opinion was entitled to greater weight because Dr. Brischetto conducted extensive objective testing in addition to conducting a clinical interview with plaintiff. See Bayliss, 427 F.3d at 1217. Moreover, the ALJ discussed that the objective testing conducted by Dr. Brischetto displayed exaggerated symptom reporting. Thus, I conclude that the ALJ has provided specific and legitimate reasons for favoring the opinion of Dr. Brischetto over that of Dr. Hoffman.

## II. **Plaintiff's Credibility**.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti, 533 F.3d at 1039; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative

evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle, 533 F.3d at 1166; Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the hearing, plaintiff testified that she suffers from social anxiety, and has difficulty getting out of the house and interacting with people. Plaintiff testified that she has been taking approximately two classes per semester at Portland Community College, and has a 3.2 grade point average. Plaintiff stated that she also suffers from depression, which sometimes gives her suicidal thoughts. Plaintiff testified that her depressive episodes occur about once a month, lasting for a few days. Plaintiff stated that during her depressive episodes, she is unable

get out of bed and thinks of suicide.  Plaintiff stated that she spends about four to six hours a day looking at art images on the computer, and that her boyfriend does the cooking, laundry, cleaning and shopping.

The ALJ concluded that plaintiff's medically determinable impairments can reasonably be expected to produce some symptoms, but that the plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible.  The ALJ did not make a specific finding that plaintiff was malingering. Therefore, the ALJ was required to justify the credibility determination with clear and convincing evidence.  Tommasetti, 533 F.3d at 1039.  I conclude that the ALJ's reasoning falls short of clear and convincing.

The ALJ specifically discredited plaintiff because she informed her counselor in February of 2008, that she had started a new romantic relationship and that she was the creator and facilitator of a painter's group at school.  This finding is supported by substantial evidence.  I agree with the Commissioner that plaintiff's ability to form a new romantic relationship and facilitate a painting group is inconsistent with the type of debilitating social anxiety alleged by plaintiff, and that the ALJ could appropriately discredit plaintiff on this basis.  Tomasetti, 533 F.3d at 1039.

17 – OPINION AND ORDER

The ALJ also discredited plaintiff because she "functions independently and attends college." Contrary to the ALJ's conclusion, I find that on the record before me, plaintiff's ability to attend college on a part-time basis, standing alone, is not inconsistent with her allegations of disability.  As noted above, plaintiff testified that she often drops classes because she is unable to get out of the house or has difficulty completing the coursework.  (Tr. 596.)  Plaintiff further testified that she suffers bouts of depression once a month lasting for several days. Plaintiff's testimony also is consistent with reports to her treating physician Dr. Raj.  For example, on February 7, 2007, plaintiff sought treatment for anxiety attacks which were causing crying episodes at school.  (Tr. 257.)  Accordingly, I conclude that plaintiff's ability to successfully take a few college classes is not an adequate basis upon which to discredit plaintiff.

With respect to the ALJ's finding that plaintiff "functions independently," the ALJ did not provide specific information as to what daily activities plaintiff is able to perform that are transferrable to a work setting.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)("if a claimant is able to spend a substantial portion of the day engaged in pursuits involving the performance of functions that are transferrable to a work setting, a specific finding as to this fact may be sufficient").  Plaintiff testified that her boyfriend does the cooking, cleaning, laundry, and

shopping. Plaintiff's father, Charles Province, submitted a third party report indicating that he helps plaintiff three times a week with laundry, shopping, and getting to appointments, and that plaintiff bathes irregularly and primarily eats cereal. (Tr. 137.) Although the ALJ noted that plaintiff spends time on the computer each day, the ALJ did not explain how that activity is inconsistent with her allegations of depression and anxiety or, alternatively, how that activity is transferrable to a work setting. Therefore, I conclude that on the record before me, the ALJ's finding is not supported by substantial evidence, and is not an appropriate basis upon which to discredit plaintiff.

The Commissioner contends that the court should infer that the ALJ relied upon the results of the MMPI-2 showing symptom exaggeration as a basis upon which to discredit plaintiff. I disagree. The ALJ did not discount plaintiff's credibility on the basis of the MMPI-2 or her self-reported symptoms, and the Commissioner's post-hoc rationalization is rejected. Stout, 454 F.3d at 1054; Connett, 340 F.3d at 874.

Because I have determined that several of the reasons provided by the ALJ for finding plaintiff less than fully credible are not supported by substantial evidence, I must determine whether the ALJ's reliance on such reasons is harmless error. Carmickle, 533 F.3d at 1162. Because the remaining valid reason – that plaintiff has established a new romantic relationship and has facilitated a

painting group – *by itself* does not amount to clear and convincing support for the adverse credibility determination, the ALJ's error is not harmless.

### III. **Step Five**.

In step five, the Commissioner must show that the claimant can do other work that exists in the national economy. Andrews, 53 F.3d at 1043.    The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets out all of the claimant's limitations that are supported by substantial evidence.    Tackett, 180 F.3d at 1101.

In this case, the ALJ failed to provide clear and convincing reasons for rejecting the opinion of plaintiff's treating physician, Dr. Raj, and plaintiff's testimony about her mental health limitations and absenteeism, and thus such symptoms were erroneously excluded from the plaintiff's RFC.    Lingenfelter, 504 F.3d at 1040.    It follows that substantial evidence does not support the ALJ's step five determination, since it was based on the erroneous RFC.    Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

### IV. **Credit as True**.

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits.    Harman, 211 F.3d at 1178.    The issue turns on the

utility of further proceedings.  A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  Id.  The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id.

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence.  Connett, 340 F.3d at 876.

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Raj's opinion that the stressors of working would cause plaintiff to be absent from work greater than two days per month, and that plaintiff suffered severe limitations with her pace at work due to interruptions caused by her depression and anxiety.  (Tr. 539.)  The ALJ also failed to provide legally sufficient reasons for rejecting plaintiff's testimony that she suffers depressive episodes once a month, lasting for a few days.  Plaintiff testified that during her

depressive episodes, she is unable to get out of bed an thinks of suicide. At the hearing there was testimony from Vocational Expert Nancy E. Bloom that absences in excess of two days per month would preclude employment. (Tr. 588.) Therefore, when plaintiff and Dr. Raj's testimony is credited, it is clear that plaintiff is disabled under the meaning of the regulations.

In short, because there are no outstanding issues that exist which must be resolved, and it is clear from the record that plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for an immediate calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g). See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).

Because I have remanded for further proceedings, I do not address plaintiff's remaining issues.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this _6_ day of MARCH, 2012.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

22 - OPINION AND ORDER